**GRANITE ROCK COMPANY, et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. 5:01–CV–21044–JW.

United States District Court, N.D. California, San Jose Division.

Jan. 30, 2003.

Thomas F. Carlucci, Foley & Lardner, San Francisco, CA, for Plaintiffs.

Thomas Moore, United States Attorney Office, San Francisco, CA, for U.S.

## ORDER GRANTING DEFENDANT'S CROSS–MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

WARE, District Judge.

### I. INTRODUCTION

This action was filed by Plaintiffs as the result of the Internal Revenue Service's ("IRS") disallowance of Granite Rock Company's 1995 tax deduction of approximately $20 million dollars for the cost of a new conveyor belt system. Both parties agreed that the case could be resolved by summary judgment and filed cross-motions for summary judgment. Plaintiffs argue that the deduction is proper based on the receding face doctrine, while the IRS argues that the deduction is not allowed based on such doctrine and that the costs of the new conveyor belt system must be charged to capital and recovered through depreciation or other similar deductions over a period of years.

The Court heard the parties' cross-motions for summary judgment on January 27, 2003. Attorney Thomas Carlucci appeared on behalf of Plaintiffs and Assistant United States Attorney Thomas Moore appeared on behalf of Defendant. Based on all papers filed to date, as well as on the oral argument of counsel, the Court grants Defendant's cross-motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment for the reasons set forth below.

### II. BACKGROUND

Plaintiff Granite Rock Company ("Plaintiff")[1] is in the business of mining and selling granite rock products for use in road construction and as building material for the last decade. Plaintiff obtains the raw granite from its quarry in Aromas, California, known as the A.R. Wilson Quarry ("Wilson Quarry"). In order to mine the granite, Plaintiff must first remove the dirt and sandy clay, commonly referred to as the "overburden." The overburden must be removed, transferred and stockpiled in a dumpsite away from the mine pit so that the granite can be efficiently extracted from the mining face. Once extracted, the granite is temporarily stockpiled on the floor of the quarry. It is then fed into an in-pit primary crusher and crushed into different sizes. The crushed granite is then taken to a processing plant where it is further refined to make Plaintiff's's saleable product. The mining face and the processing plant are located about one mile apart. The crushed granite is transported from the face to the processing plant by a conveyor belt system.

Prior to 1995, Plaintiff removed the overburden from the mining face by using self-loading scrapers that transported the

---

1. In addition to Granite Rock Company, individuals John Orcutt and Martha Edwards, as Guardians of Arthur Wilson Woolpert, Notice Shareholder, are Plaintiffs in this action. Plaintiff Woolpert, as a pass through shareholder, receives the flow-through tax benefits and burdens in his respective percentage of ownership in the company. The IRS's disallowance of the deduction resulted in an assessment against him in the amount of $26,000.

overburden to a conveyor belt loading point. The conveyor belt system then transported the overburden to two dumpsites located within the Wilson Quarry, adjacent to the mine pit. Plaintiff used these dumpsites for overburden storage since it began operations over 100 years ago. In order to maintain normal production output of the mine, Plaintiff determined that it needed to open another dumpsite and to construct a new conveyor belt system to serve it. Without access to a new dumpsite, mining activities at the Wilson Quarry could not have continued.

Accordingly, Plaintiff planned and constructed a new conveyor belt system which now serves as the exclusive means for transporting overburden from the face of the mine to another dumpsite adjacent to the Wilson Quarry, known as the "Brigantino dumpsite." The new conveyor belt system began operating in September of 1995. Plaintiff claimed a deduction in tax year 1995 for the total cost of the new conveyor belt system, which was $21,361,042, arguing that the new system satisfies all of the requirements of the receding face doctrine.

The IRS issued a Notice of Final S Corporation Administrative Adjustment ("FSAA") to Plaintiff which disallowed the deduction of the total cost of the project. The IRS takes the position that the cost of the Brigantine Project may not be deducted in full but must be depreciated over the useful life of the new conveyor belt system because the system does not fall under the receding face doctrine. Plaintiff paid the assessed tax and then filed a complaint in this Court seeking a readjustment of the tax liability. The parties now seek summary judgment in their favor.

## III. STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. If he meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof at trial. *Id.* at 322–23, 106 S.Ct. 2548.

The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties. To preclude the entry of summary judgment, the non-moving party must bring forth material facts, i.e., "facts that might affect the outcome of the suit under the governing law ... Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine, Inc.,* 501 U.S. 496, 111 S.Ct. 2419, 2434–35, 115 L.Ed.2d 447 (1991) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505); *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service,* 809 F.2d at 631. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## IV. DISCUSSION

Plaintiff concedes that, as a general principle, the cost of a capital asset which has a life of more than one year is not deductible as an ordinary and necessary business expense in a single tax year, but must be depreciated over time. Since the new conveyor belt system has a useful life of more than one year, its cost may not ordinarily be deducted as a business expense in a single tax year. However, a long-recognized exception to this general principle is the "receding face doctrine." Under this doctrine, the cost of equipment required to remedy a condition caused by recession of the working face of a mine is deductible in a single tax year, so long as the remedial action only maintains or restores normal output. *See Marsh Fork Coal Co. v. Lucas,* 42 F.2d 83, 84–85 (4th Cir.1930). The doctrine is recognized in Section 1.612–2(a) of the Treasury Regulations, which states that expenditures for equipment which are necessary to maintain the normal output solely because of the recession of the working face of the mine and which do not increase the value of the mine shall be deducted as ordinary and necessary business expenses. 26 C.F.R. § 1.612–2(a).

In this instance, Plaintiff argues that the new conveyor belt system meets the requirements of the receding face doctrine since the system was necessitated solely as a result of the recession of the mining face. Plaintiff also contends that the new system did not increase the value of the granite mine since it merely replaced the prior conveyor belt system.

The "receding face" occurs when, as the result of mining, the working face of the mine where the ore is dug out gets farther away from the opening of the mine. Based on the progressively increasing distance between the working face and the outside of the mine, additional machinery and equipment is necessary in order to maintain the normal output of the mine. Therefore, it is deemed fair that the expenses of the additional machinery and equipment should be charged against the ore that has been mined as a capital expenditure rather than as a long-term depreciation expense. *See e.g., Roundup Coal Mining v. Commissioner,* 20 T.C. 388, 1953 WL 56 (1953).

In this case, the IRS contends that the conveyor belt system was not necessitated solely as a result of the recession of the mining face. Rather, the IRS argues, a new dumpsite for the overburden was needed and, therefore, Plaintiff decided to

install a new conveyor belt system to carry the overburden to the new dumpsite. Had a new dumpsite not been necessary, the IRS asserts that no new conveyor belt system would have been installed. The IRS contends that the receding face doctrine does not apply. Consequently, the IRS argues that Plaintiff cannot deduct the entire cost of the new system in one tax year.

Since under the Regulation, the receding face doctrine applies only in instances where an expense has been incurred **"solely because of the recession of the working face of the mine,"** the Court must assess whether the cost of the new conveyor belt system was incurred solely due to the recession of the mine face and not due to any other factor.

The leading case which applies and discusses the receding face doctrine is *Marsh Fork Coal Co. v. Lucas,* 42 F.2d at 84. In *Marsh,* the taxpayer was required to acquire and install additional rail cars, track and a locomotive in order to lengthen its mine tunnel due to the recession of the mine's working face. The Fourth Circuit upheld the taxpayer's deduction based on the receding face doctrine, finding that the expenditures for those items should be fairly charged against the coal which had been mined since its removal had necessitated such additional expense.

In *Commissioner v. H.E. Harman Coal Corp.,* 200 F.2d 415, 418 (4th Cir.1952), the Court discussed the application of the "solely" requirement. In *Harman,* the "coal seam" being mined changed in geologic character as the working face of the mine receded. This change in the character of the seam necessitated a change in the mining operation and required the taxpayer to acquire new equipment to continue efficient mining operations. The taxpayer claimed a deduction for the cost of the new equipment based on the receding face doctrine. The IRS disallowed the

deduction. On appeal, the Fourth Circuit affirmed the government's denial of the deduction on the basis that the new equipment was not necessitated solely by the receding face but by the geologic change in the character of the coal seam. The Circuit concluded that although the change appeared as the face receded, the associated expenses were due to the geologic changes and were not due solely to the recession of the mine face.

In this case it is undisputed that the new conveyor belt system would not have been built had the original dumpsites for the overburden not reached their capacity. Therefore, the new system was required because the dumpsites were full and not solely as a result of the recession of the mine face. Had Plaintiff simply sought to extend the existing conveyor belt system to remove the overburden created as a result of the receding mine face, the costs of such expansion would have been deductible as a capital expense under the receding face doctrine. Therefore, the Court finds that the receding face doctrine is not applicable in this instance and that the IRS properly disallowed Plaintiff to expense the entire cost of the new conveyor belt system in tax year 1995.

## V. CONCLUSION

The Court grants Defendant's motion for summary judgment and denies Plaintiffs' cross-motion for summary judgment.